## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

UNITED STATES OF AMERICA,
ex rel. JILLANNA GILLUM,

                         Plaintiff-Relator,

v.                                                                              CIVIL ACTION NO.   3:21-0323

TRI STATE ADDICTION RECOVERY RESOURCES, LLC
THE LIFEHOUSE, INC.,
RAYMOND "ROCKY" MEADOWS, and
HELEN CRUTCHER-MEADOWS,

                         Defendants.

### MEMORANDUM OPINION & ORDER

Pending is the United States Of America's Motion For An Order To Preserve Defendants' Assets, ECF No. 67. For the reasons set forth below, the Court **DENIES** this Motion.

### BACKGROUND

Plaintiff-Relator Jillanna Gillum filed her Complaint on June 1, 2021. Between July 2021 and April 2024, the United States repeatedly moved to extend the deadline to inform the Court of its decision regarding intervention in this case. After eight such motions, the United States filed its Notice of Election to Intervene in Part and Decline in Part on April 26, 2024. *See* ECF No. 38. In its Notice, the United States requested this Court enter a ninety-day stay to run from the date when the Court partially lifts the seal to allow the United States time to file its complaint. *See id.* at 3.

On April 29, 2024, this Court granted the United States' request. The Court partially lifted the seal in this action and stayed this action for ninety days. *See* ECF No. 39. On June 27, 2024, the parties participated in mediation that failed to resolve the claims. *See* ECF No. 40. The United

States filed its Complaint in Intervention on July 24, 2024. *See* ECF No. 41. The United States alleges Defendants knowingly submitted "false or fraudulent claims to the United States and the State of West Virginia through the Medicaid Program for reimbursement for certain transportation services and peer recovery support services that were billed in violation of Medicare and Medicaid statutes, regulations, and policies." *Id.* at 1 ¶ 1.

The United States issued electronic summons to Defendants on July 24 and July 25. This Court lifted the stay on August 2, 2024. Counsel held a planning meeting pursuant to Rule 26(f) of the Federal Rules of Civil Procedure on October 10, 2024. *See* ECF No. 55. The parties provided their Federal Rule of Civil Procedure 26(a)(1) disclosures, and the United States filed a Notice of Reservation of Rights "reserv[ing] the right to contact Defendants' current and/or former employees consistent with the *West Virginia Rules of Professional Conduct*." ECF No. 60; *see also* ECF Nos. 57-59.

On January 23, 2025, Defendants moved the Court "to stay all proceedings and current deadlines in this matter pending the conclusion of the parallel criminal investigation." ECF No. 62. The United States informed the Court that it did not object to the stay except for reserving the right to be heard on the issue of preservation of Defendants' assets. *See* ECF No. 66. The United States subsequently moved the Court for entry of an Order preserving Defendants' assets. ECF No. 67. The United States requested:

> [A]n Order pursuant to the All Writs Act, 28 U.S.C. § 1651, to prevent Defendants from dissipating their assets prior to judgment. Specifically, the United States requests an Order that requires Defendants to (1) physically and financially maintain any and all real or personal property, (2) prevent deterioration of any and all real or personal property, (3) provide notice to the Court and the United States of the intent to sell any real or personal property thirty (30) days prior to the intended sale, and (4) provide notice to the Court and the United States of any withdrawal of funds from any financial account owned or operated by Defendants in excess of ten thousand dollars ($10,000.00). Additionally, the United States requests leave of the Court to issue *lis pendens* for any real property held by

Defendants and any associated entities and/or persons in which the Defendants have an interest to provide public notice that the property may be used to satisfy judgment in favor of the United States.

Pl.'s Mem., ECF No. 68, at 2. The United States grounded its request in the prejudgment remedies available under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, *et seq.*, and argued in the alternative that the All Writs Act "includes the authority to issue orders to restrain or preserve assets to help maximize the amount of money actually recovered to satisfy monetary penalties, such as restitution and money judgments." Pl.'s Mem. at 4-5.

## DISCUSSION

## I. FDCPA

First, the Court considers the argument that the United States is entitled to relief under the FDCPA. The FDCPA provides that "[t]he United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy." 28 U.S.C. § 3101(a)(1). This application must set forth the factual and legal basis for each remedy sought and set forth with particularity that all statutory requirements for the issuance of the prejudgment remedy sought have been satisfied. *Id.* §§ 3101(a)(2), 3101(a)(3). In particular, the United States must provide "an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application." *Id.* § 3101(c)(1). The affidavit shall state "specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt." *Id.* § 3101(c)(2)(A). Additionally, this affidavit must state one or more of the grounds for relief:

[A] prejudgment remedy may be granted by any court if the United States shows reasonable cause to believe that--
(1) the debtor--

(A) is about to leave the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States in its effort to recover a debt;

(B) has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States;

(C) has or is about to convert the debtor's property into money, securities, or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying, or defrauding the United States; or

(D) has evaded service of process by concealing himself or has temporarily withdrawn from the jurisdiction of the United States with the effect of hindering, delaying, or defrauding the United States; or

(2) a prejudgment remedy is required to obtain jurisdiction within the United States and the prejudgment remedy sought will result in obtaining such jurisdiction.

28 U.S.C. § 3101(b).

The Court will assume without finding that the United States can invoke the FDCPA to pursue prejudgment remedies in these circumstances. *See U.S. ex rel Doe v. DeGregorio*, 510 F. Supp. 2d 877, 884 (M.D. Fla. 2007) (finding the United States established a claim for a debt arising out of an alleged conspiracy under the False Claims Act). The United States' application does not satisfy the requirements of 28 U.S.C. § 3101.

The United States estimated that its loss exceeds $6 million. Pl.'s Mem. at 2. The United States noted: "This estimate does not include treble damages as mandated by the FCA or any civil penalties which the Court may impose. The United States will present an expert to testify as to the actual loss due to the fraudulent claims." Pl.'s Mem. at 2 n.3. The FDCPA requires that the United States submit "an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application." 28 U.S.C. § 3101(c)(1). This affidavit must include "specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt." *Id.* § 3101(c)(2). The United States did not submit an affidavit with facts supporting the validity of the claim for a debt or stating specifically the amount of the debt.

-4-

The United States submitted two affidavits alongside its motion. *See* ECF Nos. 67-1, 67-3. First, a special agent for the Department of Health and Human Services Office of Inspector General declared that he received information at the end of July 2024 that Rocky and Helen Meadows planned to close Tri State Addiction Recovery Resources, LLC ("TSARR") and The Lifehouse, Inc. ("Lifehouse"). ECF No. 67-1 (Cruickshank Decl.) at 1. He declared that subsequent witness interviews indicated that Helen Meadows terminated employees of TSARR and announced her intention to close the business in July 2024. *Id.* He declared that subsequent investigation indicated that TSARR and Lifehouse appeared abandoned, vehicles were parked at TSARR and remained idle, and TSARR patients were referred to other providers for care. *Id.* This investigation further indicated that Rocky and Helen Meadows owned or otherwise controlled property in West Virginia, Kentucky, and Florida and sequestered large amounts of currency. *Id.* at 1-2. The agent's investigation indicated that Helen Meadows moved to Florida and "[i]t was reported that Rocky and Helen Meadows have or are in the process of cleaning out their residence in Kentucky." *Id.*

Second, a contractor for the United States Attorney's Office declared that he reviewed available financial information for the Defendants and identified several large withdrawals and deposits between April 27, 2024 and June 23, 2024. ECF No. 67-3 (Rowley Decl.) at 1-2. With the available information, he was unable to determine the origin of a deposit of nearly $250,000 and unable to determine if or where withdrawals totaling $250,000 were deposited. *Id.* at 2. These declarations were executed on January 31, 2025 and February 6, 2025, respectively. *See* Cruickshank Decl. at 2; Rowley Decl. at 2. In its briefing, the United States indicates that it has limited financial information for Defendants, and "[t]he limited information that is available ends in June 2024." Pl.'s Mem. at 6 n.6.

Alongside these two declarations, the United States provided a document titled "Known Properties." ECF No. 67-2. This exhibit lists 30 addresses, and what appears to be property tax information for each address, under the following headings: Raymond Meadows, Raymond Meadows and Helen Crutcher, Helen Crutcher, Lifehouse, and R&H Holdings. *Id.* For example, the first entry on the list is "617 4th St Lt 16, Book 1393, page 137, tax ticket 2024 40651." ECF No. 67-2 at 1. In its briefing, the United States only identifies these addresses as properties owned or controlled by the Defendants. Pl.'s Mem. at 3-4.

From this information, the United States asks the Court to conclude that Defendants are defaulting on the financial obligations of the corporate entities and failing to maintain the real and personal corporate property. Pl.'s Mem. at 5. The United States claims that the business properties appear abandoned and Defendants "are in a position to unwind business and dispose of corporate assets." *Id.* Defendants admit that the Defendant entities have closed "and are in the process of winding down their operations and liquidating their assets in compliance with the wind down requirements governing West Virginia business entities." Def.'s Resp., ECF No. 71, at 11. The United States emphasizes that Defendants withdrew large sums of money from their accounts for which the United States is unaware of any corresponding deposit. Pl.'s Mem. at 3-4. Further, the United States claims that Defendants have taken steps to prepare their primary residence in Kentucky for sale. *Id.* at 3.

The United States points to the grounds for relief in 28 U.S.C. § 3101(b)(1)(B): the debtor "has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States." The Court finds that the United States has not provided "reasonable cause to believe that" Defendants have done this or are about to do so. 28 U.S.C. § 3101(b). Defendants admit that the Defendant entities have closed and that

Defendants are liquidating the Defendant entities' assets. Def.'s Resp. at 11. The United States has not provided evidence that the Defendants have disposed of assets with the effect of hindering, delaying, or defrauding the United States.

The first affidavit indicates that Defendants have a large number of properties and significant amounts of currency. *See* Cruickshank Decl. The United States submitted a document that purports to list these properties. *See* ECF No. 67-2. But the United States did not provide any context for this list of addresses. This exhibit does not identify who created the list or what sources were used to compile it. The United States does not provide sufficient basis for the Court to find that these properties—several of which are listed under "R&H Holdings," which is not one of the Defendant entities—are actually associated with Defendants, let alone that Defendants are about to dispose of them in a way that is prejudicial to the United States. Likewise, the United States does not provide any basis for the Court to find that certain properties are the proceeds of fraudulent activity. The second affidavit indicates that Defendants moved several hundred thousand dollars between April 2024 and June 2024. Rowley Decl. at 2. The United States has limited financial information and is unable to identify the source of one deposit and the ultimate destinations of two withdrawals. *Id.* The Court cannot infer from this limited information that Defendants "ha[ve] or [are] about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States." 28 U.S.C. § 3101(b)(1)(B).

The United States represents that one of the Defendants has moved to Florida and that the Defendants' primary residence in Kentucky was prepared for sale. *See* Cruickshank Decl.; Pl.'s Mem. at 5-6. The United States represents that Defendants own or control several properties in Florida. *See* ECF No. 67-2; Pl.'s Mem. at 3-4. The United States further claims, without citing to

any affidavit, that "Defendants maintain personal and corporate financial accounts that are believed to contain substantial sums of money that also may be available to satisfy any judgment against them." Def.'s Resp. at 3. Even assuming that the United States has shown that Defendants intend to sell their primary residence, leave the region, and move to another state where they own property, the United States has not shown that Defendants have or are about to dispose of property or convert it into money "with the effect of hindering, delaying, or defrauding the United States." 28 U.S.C. §§ 3101(b)(1)(B), 3101(b)(1)(C).

The Court cannot find that Defendants have or are about to dispose of assets in a way that would prejudice the United States based on the facts presented. The facts in this case are unlike those in *DeGregorio*, one of the cases on which the United States relies. Pl.'s Reply, ECF No. 73, at 3 (citing *DeGregorio*, 510 F. Supp. 2d at 884). In that case, Joseph DeGregorio, the sole shareholder of a Medicare provider, was imprisoned when he made phone calls directing the sales of several properties. *DeGregorio*, 510 F. Supp. 2d at 889. DeGregorio previously indicated that the equity in his real property was his only source of financial support. *Id.* A law enforcement agent submitted an affidavit concluding, based in part on monitoring of DeGregorio's calls, that DeGregorio and his company were "attempting to avoid responsibility for their False Claims Act liability." *DeGregorio*, 510 F. Supp. 2d at 889. The affidavits submitted in this case make no such conclusion. Importantly, the United States has not provided evidence for its claim that Defendants are "depleting financial accounts." Pl.'s Reply at 5. Its affidavit only states that its investigator is "unable to determine" certain information about three transactions. Rowley Decl. at 2. The United States asks the Court to assume that the gaps in its admittedly limited financial information are best explained by some kind of nefarious conduct. The Court will not make this assumption.

Further, the procedural history of this case weighs against any finding that the Defendants have acted to delay the United States. The United States delayed this case by repeatedly moving for extensions of the deadline for its intervention. After the United States intervened in April 2024, there was minimal activity on the docket. According to its affidavit, the United States learned in mid-2024 that the Defendants planned to close the Defendant entities. *See* Cruickshank Decl. Subsequent investigation indicated that certain properties appeared abandoned. *Id.* The United States reviewed Defendants' banking and financial information covering the period of April, June, and July 2024. *See* Rowley Decl. But the United States did not seek relief regarding preservation of assets until Defendants moved for a stay in early 2025. These delays undercut the United States' argument that it requires relief now because Defendants' assets "can be dissipated at any moment." Pl.'s Mem. at 6.

Additionally, the Court finds merit in Defendants' arguments that the requested relief is overly broad and that compliance would be burdensome for Defendants and the Court. The United States proposes that Defendants explain to the Court and the United States any withdrawal of funds exceeding $10,000. The United States did not provide any basis for this threshold amount. Defendants emphasize that the requested relief would require them to notify the United States of payment of legal fees, which could make it difficult for Defendants to retain an expert and "may even risk requiring Defendants to reveal their criminal defense strategy." Def.'s Resp. at 12. Further, the United States requests physical upkeep of the Defendants' properties that is so vague as to be unworkable. The requested relief would require maintenance "including, but not limited to" regular maintenance, inspections, repairs, and anything required to "prevent any deterioration." Defendants note that it will be impossible for them to prevent deterioration of any personal and real property without diminishing or deteriorating other assets. Def.'s Resp. at 11. The intrusive

effects of the relief sought are compounded now by the imminent stay of this civil action while a parallel criminal investigation is conducted, and controlled, by the United States.

## II. All Writs Act

Next, the Court turns to the argument that the United States is entitled to relief under the All Writs Act, 28 U.S.C. § 1651, *et seq.*, "to prevent Defendants from dissipating their assets prior to judgment." Pl.'s Mem. at 2. The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Defendants argue that the Court's equity powers do not extend to reach all of Defendants' assets and preserve them to satisfy a potential money judgment. They point the Court to a Fifth Circuit case holding that the All Writs Act and a district court's inherent powers "would justify only an order essential to preserving the court's subject matter jurisdiction or processing the litigation to a complete resolution, and not an order designed simply to aid the plaintiff in enforcing any judgment he might obtain." *In re Fredeman Litig.*, 843 F.2d 821, 826 (5th Cir. 1988). In that case, the Fifth Circuit found the district court erred when it relied on its inherent equitable powers to enter an injunction prohibiting the defendants in a civil RICO action from "transferring or removing virtually any of their assets without the court's express approval and the plaintiffs' knowledge." *Id.* at 822.

The Fifth Circuit relied on the Supreme Court's decision in *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945), which affirmed that "[t]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *In re Fredeman Litig.*, 843 F.2d at 824. In *De Beers*, the Supreme Court invalidated an injunction freezing the assets of

corporate defendants in a civil antitrust prosecution "until such time as [the district court] shall have determined the issues of this case and defendant corporations shall have complied with its orders." *De Beers*, 325 U.S. at 215. In reversing the district court, the Supreme Court held that the injunction "is, and can only be, sustained as a method of providing security for compliance with other process which conceivably may be issued for satisfaction of a money judgment for contempt." *De Beers*, 325 U.S. at 220. In *De Beers*, unlike in this case, the district court had no jurisdiction to enter a money judgment or civil penalty. *Id.* at 219.

The Fourth Circuit first applied *De Beers* in an action where the United States sought monetary penalties for alleged violations of federal banking laws. *United States v. Cohen*, 152 F.3d 321, 323-25 (4th Cir. 1998). In that case, the district court entered a preliminary injunction instituting certain reporting and approval requirements for the defendant's transactions and preventing him from dissipating his assets.[1] *Id.* at 323. The Fourth Circuit held that "the district court erred in relying upon its inherent equitable powers to enter a pre-judgment injunction freezing [the defendant's] assets." *Id.* at 324.

The Fourth Circuit noted that other circuits had split in their first applications of *De Beers*. Some circuits, including the Fifth Circuit in *In re Fredeman Litigation*, "followed *DeBeers*," while others "found distinctions between it and the case with which they were confronted." *Id.* The

---

[1] The district court's preliminary injunction did not apply to: "(1) expenditures of personal funds for ordinary and reasonable living expenses, in an amount that does not exceed ten thousand ($10,000) dollars during any calendar month; (2) expenditures in the ordinary-course-of-business arising from bona fide contractual obligations with third parties incurred prior to the commencement of this action; (3) bona fide ordinary-course-of-business transactions for value of five thousand ($5,000) dollars or less; (4) expenditure of funds for costs reasonably incurred in complying with the Preliminary Injunction; (5) reasonable attorneys fees and litigation costs in defense on this action; and (6) any other expenditure authorized by the court." *Cohen*, 152 F.3d at 323 n.2 (internal quotation marks omitted).

-11-

Fourth Circuit joined the first category: its case "[was] not significantly different from *De Beers*." *Id.* at 324. The Fourth Circuit remanded the case with instructions that the district court had authority to freeze property traceable to the alleged banking law violation under 18 U.S.C. § 1345(a)(2)(A), as well as broader authority under Virginia equity law and attachment procedure, but that the district court needed to make clear the factual basis of its order. *Cohen*, 152 F.3d at 324-26. The district court could not rely on its inherent equitable powers. *Id.* at 324.

The United States argues that the Court should not rely on *In re Fredeman Litigation* for three main reasons: (1) the United States, not a private plaintiff, seeks relief here, (2) the United States seeks to maintain, not freeze, Defendants' assets, and (3) the United States seeks to maintain Defendants' assets to preserve the status quo, which should fall within the constraints of "order essential to preserving the court's subject matter jurisdiction or processing the litigation to a complete resolution." Pl.'s Reply at 6 (quoting *In re Fredeman Litig.*, 843 F.2d at 826).

But in all of these respects, the facts in this case are similar to the facts in *Cohen*. In *Cohen*, the district court granted an injunction prohibiting the defendant from dissipating assets but specifically allowing him to spend money on living expenses (capped at $10,000 per month), business expenditures, legal expenses, and any other expenditures authorized by the court. 152 F.3d at 323. In some ways, this injunction was less restrictive than the proposed relief here. The *Cohen* defendant had certainty that he could pay reasonable attorneys' fees and litigation costs without objection. In this case, the requested relief neither authorizes nor prohibits any kind of transaction. Instead, it would position the United States to "seek redress if available and warranted during the duration of the stay" whenever the United States determines that a certain transaction or set of transactions is suspect. Pl.'s Reply at 6. These facts are not distinguishable from the facts

-12-

in *Cohen*. Accordingly, the requested relief is not available under the All Writs Act and the Court's inherent equitable powers.

## CONCLUSION

The Court **DENIES** the United States Of America's Motion For An Order To Preserve Defendants' Assets, ECF No. 67. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:       April 18, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE